# GROUP EXHIBIT A

ELECTRONICALLY FILED
12/11/2017 11:54 PM
2017-L-012612
CALENDAR: U
PAGE 1 of 23
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| DAISY SANCHEZ, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. |
| | ) | |
| CAR OUTLET; TOTAL FINANCE; | ) | |
| ANDREW DELUCA, individually and | ) | |
| in his capacity as a director; | ) | |
| VERONICA CARDONA, individually | ) | |
| and in her capacity as a supervisor, | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |
| | ) | |

## COMPLAINT

NOW COMES plaintiff, DAISY SANCHEZ, by her attorney, Jason Han of the Law

Offices of Jason Han and complaining of defendants, CAR OUTLET, TOTAL

FINANCE, ANDREW DELUCA, and VERONICA CARDONA states the following:

## NATURE OF CLAIMS

1) This is a civil action to correct unlawful employment practices, and to make

whole the Plaintiff, Daisy Sanchez ("Ms. Sanchez"), under the Family and Medical

Leave Act of 1993, 29 U.S.C. Section 2601 *et seq.* ("FMLA"), the Americans With

Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"), Title VII of the Civil

Rights Act of 1964, § 7, 42 U.S.C. § 2000e *et seq.* as amended by the Pregnancy

Discrimination Act of 1978, P.L. 95-555, 92 Stat. 2076 ("Title VII"), and the Illinois

Human Rights Act, 775 ILCS 5/1 *et seq.* as amended by the Pregnancy Accommodation Act of 2015, P.A. 98-1050 ("IHRA").

2)      The FMLA prohibits interference with the exercise of rights guaranteed by that statute.

3)      Title VII, the ADA and IHRA prohibit discrimination against any employee by an employer on the basis of that individual's pregnancy status, record of pregnancy status, or perceived pregnancy status.

4)      The IHRA requires employers to accommodate the pregnancy of an employee.

5)      Title VII, the FMLA, ADA, and IHRA prohibit retaliation for making use of a known right under those laws.

6)      Ms. Sanchez asserts that Defendants have 1) interfered with the exercise of her rights under the FMLA; 2) discriminated against her based on her pregnancy status in violation of Title VII, the ADA, and IHRA; 3) failed to accommodate her pregnancy under the IHRA; and 4) retaliated against her for making use of known rights under the FMLA, Title VII, ADA, and IHRA.

## ADMINISTRATIVE PROCEEDINGS

7)      Ms. Sanchez has timely and fully complied with prerequisites for administrative exhaustion required for jurisdiction in this court under Title VII, the ADA, and the IHRA and thus all conditions precedent to this lawsuit has been performed or otherwise occurred.

ELECTRONICALLY FILED
12/11/2017 11:54 PM
2017-L-012612
PAGE 2 of 23

8)    In particular, Ms. Sanchez filed a charge of discrimination with the Illinois Department of Human Rights, and, the Equal Employment Opportunity Commission within 180 days of the actions complained of on May 18, 2016.

9)    Ms. Sanchez received her right to sue notice from the Illinois Department of Human Rights on September 13, 2017. This lawsuit is timely filed within 90 days of receipt of that notice.

## THE PARTIES

10)    Ms. Sanchez is an adult, female citizen residing at 4107 West Wellington Avenue in Chicago, Illinois.

11)    Defendant, CAR OUTLET ("Car Outlet"), is a company which does business in Chicago, Illinois, where Ms. Sanchez was employed.

12)    Defendant, TOTAL FINANCE ("Total Finance"), is also a company affiliated with Car Outlet and does business in the same facility as Car Outlet's Chicago place-of-business. Ms. Sanchez was employed by Total Finance as well.

13)    Defendant, ANDREW DELUCA ("DeLuca"), is the General Counsel and also an decisionmaker of Total Finance. On information and belief, DeLuca oversees much of the hiring, discharge, and disciplinary decisions of Car Outlet and Total Finance.

14)    Defendant, VERONICA CARDONA ("Cardona") was Ms. Sanchez' supervisor at Car Outlet and Total Finance. Cardona directly supervised Ms. Sanchez and made decisions regarding Ms. Sanchez' discipline and discharge.

ELECTRONICALLY FILED
12/11/2017 11:54 PM
2017-L-012612
PAGE 3 of 23

3

15)    At all relevant times, Ms. Sanchez was a "qualified employee" as defined by 42 USC §12111(8). This is because she had been satisfactorily performing all of the essential functions of her job for more than five years prior to her medical leave.

16)    Further, with the reasonable accommodation of intermittent leave caused by her pregnancy, and without the discrimination and retaliation against her from the Defendants, Ms. Sanchez could have continued to perform all such functions to be qualified under the ADA and IHRA.

17)    Car Outlet and Total Finance are covered employers as defined in the ADA, 42 USC § 12111(5)(A).

18)    Both Car Outlet and Total Finance are also employers as defined in the IHRA, 775 ILCS 5/2-101.

19)    Both Car Outlet and Total Finance are employers within the meaning of Title VII, 42 USC §2000e(b).

20)    Both Car Outlet and Total Finance are covered employers as defined in FMLA, 29 U.S.C. § 2611(4), in that they engage in commerce while employing over 50 employees for each working day during each of 20 or more calendar workweeks preceding the latest calendar year.

ELECTRONICALLY FILED
12/11/2017 11:54 PM
2017-L-012612
PAGE 4 of 23

## FACTUAL BACKGROUND

21)    Ms. Sanchez was hired by Car Outlet in February of 2008. During all relevant times, Ms. Sanchez worked full-time for Car Outlet, typically from 8:30am to 5pm, the equivalent of 40 hours per week with half-an-hour of unpaid lunch time.

22)     Ms. Sanchez is a native Chicagoan having received her high school diploma from Roberto Clemente High School on Chicago's southwest side.

23)     After high school, Ms. Sanchez pursued an associate's degree at Chicago's Wilbur Wright Community college but stopped attending after receiving the job offer with Car Outlet in 2008.

24)     Car Outlet's primary business is to sell used cars throughout the Chicagoland area and parts of southern Wisconsin.

25)     Ms. Sanchez began her employment with Car Outlet's financing division, Total Finance.

26)     Specifically, Ms. Sanchez worked in Car Outlet/Total Finance's License & Title Department ("L&T") in the position of "Title Clerk".

27)     The essential functions of Ms. Sanchez' job as a title clerk in L&T from the beginning until the end of her employment with Car Outlet/Total Finance included handling used car titles and licenses.

28)     Ms. Sanchez' job in the L&T Department was 100 percent an office job that required organization and filing skills.

29)     Ms. Sanchez' job did not require heavy lifting or manual labor.

30)     When she was hired, Ms. Sanchez' first direct supervisor was Susan Barajas ("Barajas"). Barajas interviewed Ms. Sanchez and subsequently managed her in L&T along with one other employee named Leticia Pineda.

31)     Around the end of 2012, Barajas was fired.

32)     Barajas had been out on maternity leave shortly before her firing.

ELECTRONICALLY FILED
12/11/2017 11:54 PM
2017-L-012612
PAGE 5 of 23

5

33)     On information and belief, DeLuca fired Barajas from her job only a few weeks after her return from her maternity leave.

34)     DeLuca had fired Barajas without an immediate replacement so Ms. Sanchez and Leticia Pineda shared responsibilities in that they split the work that Barajas had been doing.

35)     Essentially, Ms. Sanchez and Leticia Pineda were left by themselves to manage the L&T Department until a few months after Barajas' firing, when Car Outlet/Total Finance hired a manager to supervise Ms. Sanchez and Leticia Pineda.

36)     On information and belief, the name of the manager hired to replace Barajas was a woman by the name of Zoila Echavarria Chaveria ("Chaveria").

37)     Chaveria worked for only about a week-and-a-half before Car Outlet/Total Finance discharged her.

38)     After Car Outlet/Total Finance discharged Chaveria, Ms. Sanchez and Leticia Pineda continued to work by themselves, supervising and managing the work of the L&T Department.

39)     In February of 2013, Car Outlet transferred Carlos Perez—an employee from a different department—into the L&T Department to work alongside Ms. Sanchez and Leticia Pineda.

40)     Carlos Perez' position, level, and title—Title Clerk—was about the same, if not slightly lower, than Ms. Sanchez and Leticia Pineda in that he had less experience than Ms. Sanchez and Leticia Pineda.

ELECTRONICALLY FILED
12/11/2017 11:54 PM
2017-L-012612
PAGE 6 of 23

6

41)     When Carlos Perez transferred into L&T, Car Outlet/Total Finance had yet to name a replacement for Chaveria.

42)     Ms. Sanchez and Leticia Pineda trained Carlos Perez while continuing to manage the L&T Department.

43)     About a month after Carlos Perez' transfer into the L&T Department, Leticia Pineda left Car Outlet/Total Finance.

44)     Leticia Pineda's leaving essentially left Ms. Sanchez as the senior employee in L&T for awhile.

45)     Ms. Sanchez continued to *de facto* manage the L&T Department—including overseeing the training of Carlos Perez—along with her daily responsibilities of handling licenses and titles.

46)     In early 2014, Ms. Sanchez was promoted from Title Clerk to L&T Supervisor.

47)     The essential functions of L&T supervisor included managing other title clerks such as Carlos Perez, while continuing to do the work of a title clerk.

48)     On information and belief, on or about early 2014, Car Outlet/Total Finance were bought by the Marubeni Corporation, a Japanese conglomerate.

49)     In March of 2014, a fire engulfed Car Outlet/Total Finance's offices on Irving Park Road.

50)     The fire caused chaos to Defendants' records and inventory including Ms. Sanchez' copy of her employee handbook she had kept in her desk.

ELECTRONICALLY FILED
12/11/2017 11:54 PM
2017-L-012612
PAGE 7 of 23

7

51)     Car Outlet/Total Finance moved many of its administrative and financing operations to an office it already owned-and-operated at 3411 North Cicero Avenue in Chicago, Illinois, including Ms. Sanchez and the L&T Department.

52)     After the sale of Car Outlet/Total Finance to Marubeni, and especially after the fire, Ms. Sanchez had been told that all employees would be receiving a new employee handbook.

53)     After the move from Irving Park Road to the Cicero office, Car Outlet/Total Finance assigned a new manager, Gina Lee, to oversee much of the operations at the Cicero office.

54)     About a year after Gina Lee's assignment, she abruptly quit one day in February or March of 2015.

55)     Gina Lee announced that she was quitting by asking that all of the employees underneath her in the Cicero office, including employees who worked in other departments outside of L&T, into a conference room.

56)     In the conference room, Gina Lee declared to the employees that she did not like how DeLuca dealt with "situations" or how he spoke to employees.

57)     On or about June 15, 2015, Car Outlet/Total Finance moved several departments and employees, including the L&T Department along with Ms. Sanchez and her co-workers, from the Cicero office into a new office at 3400 North Pulaski Road in Chicago, Illinois.

58)     A few weeks after Ms. Sanchez had moved into the Pulaski office, on or about the end of June or early July of 2015, Car Outlet transferred Defendant Veronica

ELECTRONICALLY FILED
12/11/2017 11:54 PM
2017-L-012612
PAGE 8 of 23

8

Cardona ("Cardona") from a different office into the Pulaski office to oversee several departments including the Repossession Department, Underwriting Department, and L&T Department.

59)     Cardona became the direct supervisor of Ms. Sanchez, essentially taking over the position that had once belonged to Gina Lee.

60)     On information and belief, Cardona is about the same age as Ms. Sanchez.

61)     On information and belief, during all relevant times, Cardona never had children.

62)     During all relevant times, the Pulaski office was an open office with cubicles, or workstations.

63)     The first floor of the Pulaski office was where the L&T Department worked.

64)     The only closed doors on the first floor of the Pulaski office were for conference rooms, quiet rooms, the cafeteria, and the bathroom.

65)     When Cardona transferred into the Pulaski office, she was physically placed in a workstation about four or five workstations away from Ms. Sanchez.

66)     Shortly after Cardona arrived, she informed Ms. Sanchez that employees would be receiving a new employee handbook.

67)     Ms. Sanchez never received the new handbook.

68)     On or about July 5, 2015, Ms. Sanchez received confirmation from a medical clinic that she was pregnant.

69)     Ms. Sanchez already had three children before confirmation of her 2015 pregnancy all born between 2004 and 2007.

ELECTRONICALLY FILED
12/11/2017 11:54 PM
2017-L-012612
PAGE 9 of 23

9

> a. Her youngest child, Naomi Jones, was born on March 6, 2004.
>
> b. Her second child, Niah Jones, was born on November 22, 2005.
>
> c. Her third child, Nyleah Jones, was born on October 5, 2007.

70)    Ms. Sanchez raises her children with her partner, Charles Jones.

### Ms. Sanchez Files the First of Two FMLA Applications

71)    For several months, Ms. Sanchez chose not to disclose her pregnancy until on or about early September of 2015 when she began experiencing illness due to her pregnancy.

72)    Subsequent to Ms. Sanchez' pregnancy-induced illness episodes, Ms. Sanchez' obstetrician-gynecologist, Dr. Jackie Wong, told Ms. Sanchez that she would like to conduct weekly checkups of Ms. Sanchez going forward.

73)    Ms. Sanchez inquired Defendants about FMLA leave due to her pregnancy on or about mid-September of 2015.

74)    Ms. Sanchez filed for her first application for FMLA leave with Leslie Cruise, the Human Resources Manager at Car Outlet in mid-September of 2015.

75)    In her initial application for FMLA leave, Ms. Sanchez asked that her work schedule to shift slightly later by a half-hour from 8:30am-5pm to 9am-5:30pm on Mondays so she could receive weekly pregnancy checkups from Dr. Wong.

76)    Ms. Sanchez disclosed her pregnancy in her initial FMLA application and once it was accepted, she began showing up a half-hour late on Mondays, as authorized, in order to receive checkups from Dr. Wong.

ELECTRONICALLY FILED
12/11/2017 11:54 PM
2017-L-012612
PAGE 10 of 23

### *Ms. Sanchez Begins Experiencing Discrimination*

77)   After Ms. Sanchez filed her FMLA paperwork and disclosed her pregnancy to
Defendants, DeLuca and Cardona began questioning Ms. Sanchez and her use of
the FMLA leave.

78)   Particularly, DeLuca and Cardona asked Ms. Sanchez for documentation
from Dr. Wong after many of her Monday appointments for proof that she had
actually seen Dr. Wong, and, that she continued to need to see Dr. Wong.

79)   Cardona began asking Ms. Sanchez to officially clock-in and clock-out of work
whenever she needed to take a lunch break.

80)   Cardona did not ask employees that were similarly-situated to Ms. Sanchez
but not pregnant to clock-in or clock-out when they would take their lunch breaks.

81)   On Wednesday, October 28, 2015, Ms. Sanchez received a disciplinary action
form, colloquially called a "write-up", from Cardona because she had allegedly been
in the cafeteria too long after the official work start time of 8:30am.

82)   When Cardona served the write-up to Ms. Sanchez, she accused Ms. Sanchez
of clocking-in at 8:23am, sitting in the cafeteria, and then not arriving at her desk
until 8:44am.

83)   Ms. Sanchez denied the accusation and tried to show evidence that she had
returned to her desk far earlier than 8:44am.

84)   Cardona reacted by telling Ms. Sanchez, more or less, "Well, I was told that I
need to write you up because Andrew (DeLuca) saw you sitting there."

85)   Ms. Sanchez refused to sign the disciplinary action form.

ELECTRONICALLY FILED
12/11/2017 11:54 PM
2017-L-012612
PAGE 11 of 23

11

86)     Shortly after Halloween, Ms. Sanchez went to see DeLuca in his office to dispute the write-up from October 28.

87)     DeLuca reacted with anger; he refused to hear Ms. Sanchez side of the story and instead yelled at her.

88)     Ms. Sanchez left DeLuca's office feeling picked-on and discriminated.

89)     On or about November of 2015, on information and belief, Michelle (lku), a supervisor in the Repossession Department and also a woman who worked underneath Cardona quit.

90)     On information and belief, Michelle quit when she was eight-months pregnant.

91)     On information and belief, a man by the name of Francisco (lku) was hired to replace Michelle's position.

*After Submitting a Second FMLA Application in Anticipation of Her Maternity Leave, Defendants Fire Ms. Sanchez*

92)     On November 9, 2015, Dr. Wong fills-out and submits Ms. Sanchez' FMLA application to Defendants.

93)     On the FMLA application, Dr. Wong indicates that the expected delivery date of Ms. Sanchez' child will be March 11, 2016.

94)     Dr. Wong also wrote on the FMLA application that Ms. Sanchez would need six to eight weeks of maternity leave for "recovery and bonding with baby."

95)     On Thursday, January 7, 2016, Ms. Sanchez woke up feeling ill.

ELECTRONICALLY FILED
12/11/2017 11:54 PM
2017-L-012612
PAGE 12 of 23

96)     Between 7 and 7:30am Ms. Sanchez texted Carlos Perez that she was feeling sick and would not be able to come to work.

97)     Ms. Sanchez asked Carlos Perez to communicate her inability to come to work to others at Car Outlet/Total Finance, including Cardona.

98)     The next day, Ms. Sanchez arrived to work.

99)     Around 8:30am, shortly after Ms. Sanchez had arrived, she was approached by Cardona.

100)    Cardona told Ms. Sanchez that though Carlos Perez had informed Cardona of Ms. Sanchez need to stay home the previous day, that going forward Ms. Sanchez would need to contact Cardona directly on Cardona's cell phone.

101)    Ms. Sanchez responded that she did not have a problem with that policy and so going forward, she would contact Cardona directly to Cardona's cell phone.

102)    On Wednesday, January 20, 2016, Ms. Sanchez went to work but began feeling week and ill.

103)    Around 2pm, Ms. Sanchez informed Cardona that she was feeling ill and would need to go home for the day.

104)    Cardona allowed Ms. Sanchez to go home.

105)    The next day, Thursday, January 21, Ms. Sanchez woke up still feeling ill.

106)    Around 7am, Ms. Sanchez texted Cardona's cell phone that she was still feeling ill and so would not be able to come to work that day.

107)    Within a few minutes, Cardona responded with a text that said, "Call me."

108)    Ms. Sanchez called Cardona in response.

13

ELECTRONICALLY FILED
12/11/2017 11:54 PM
2017-L-012612
PAGE 13 of 23

109) When Cardona answered the phone, she told Ms. Sanchez that texts were not acceptable and that Ms. Sanchez must call Cardona.

110) On Friday, January 22, 2016, Ms. Sanchez arrived at work at 8:30am as usual.

111) Within seconds of clocking-in, Cardona approached Ms. Sanchez.

112) Cardona took Ms. Sanchez to a small, quiet room and closed the door.

113) In the quiet room, Cardona handed Ms. Sanchez another disciplinary action form.

114) This disciplinary action form was for the January 7, 2016 incident when Ms. Sanchez had texted Carlos Perez that she would not be able to come to work.

115) Specifically, the write-up stated, "On 1/7/2016, Daisy did not show up for work nor did she contact her direct manager prior to the absence."

116) Under "Reason for Disciplinary Action", the write-up provided, "All employees are expected to report to work on time and as scheduled each day. If you will be late or are unable to report to work for any reason, you must call your direct supervisor no later than thirty minutes prior to your start time that day. You cannot leave a message with any other person. Failure to follow this policy will be considered an unreported absence (no call, no show), which may result in disciplinary action up to and including termination."

117) When Cardona asked Ms. Sanchez to sign it, she refused.

118) Ms. Sanchez asked why Cardona was bringing the incident from January 7 to Ms. Sanchez' attention now, more than two weeks after-the-fact.

ELECTRONICALLY FILED
12/11/2017 11:54 PM
2017-L-012612
PAGE 14 of 23

14

119) Ms. Sanchez also pointed out that on January 8, the day after the incident, that both Cardona and Ms. Sanchez had verbally agreed on a policy going forward.

120) Cardona's reaction was cold; she told Ms. Sanchez that that was the policy.

121) Ms. Sanchez complained to Cardona that she was tired of the harassment from DeLuca and Cardona.

122) After Ms. Sanchez voiced her complaint, Cardona immediately switched subjects and asked Ms. Sanchez, "Who touches the trade titles?"

123) Ms. Sanchez reacted with confusion because the question seemed *non sequitur* to her.

124) Ms. Sanchez said, "What? I have no idea what you're talking about."

125) Cardona again asked in an angrier tone of voice, "Who touches the trade titles?"

126) Ms. Sanchez responded that yes, of course people touch the trade titles.

127) Cardona cut-off the rest of Ms. Sanchez' response and said in an accusatory voice, "So you do touch them! Thank you!"

128) Ms. Sanchez responded to Cardona that she should get to know the company better so that Cardona would know what Cardona is asking because Ms. Sanchez did not know how to answer.

129) Cardona then ended the meeting by standing up.

130) Ms. Sanchez returned to her workstation and began crying quietly.

131) Several co-workers around Ms. Sanchez saw that she was upset.

132) For the rest of the day, Ms. Sanchez could not stop feeling upset.

ELECTRONICALLY FILED
12/11/2017 11:54 PM
2017-L-012612
PAGE 15 of 23

15

133) Further, Ms. Sanchez' baby was moving and would not stop moving, probably due to her emotional state.

134) Even when Ms. Sanchez went home Friday night she could not stop feeling upset.

135) Ms. Sanchez did not sleep well on Friday night because of the accusation and the write-up.

136) The next day, Saturday, January 23, Ms. Sanchez continued to feel upset.

137) On Saturday evening, Ms. Sanchez experienced a discharge from the mucous plug on her cervix.

138) Ms. Sanchez' discharge was unusual compared to normal.

139) The next day, Sunday, January 24, around 9pm, Ms. Sanchez began experiencing pain in her stomach.

140) Ms. Sanchez went to bed hoping that the pain would subside.

141) The next morning, Monday, January 25, 2016, Ms. Sanchez awoke at 5:30am and after dropping off her kids to school, went to see Dr. Wong at 8:45am for her regularly scheduled weekly appointment.

142) When she arrived at the doctor's office, Ms. Sanchez informed the doctor about her pain and the unusual discharge.

143) The doctor diagnosed Ms. Sanchez as undergoing contractions and that she was dilating.

144) The doctor sent Ms. Sanchez to the emergency room.

ELECTRONICALLY FILED
12/11/2017 11:54 PM
2017-L-012612
PAGE 16 of 23

16

145)   Before going to the emergency room, Ms. Sanchez called Cardona's personal cell phone number.

146)   When Cardona answered, Ms. Sanchez told her that the doctor recommended Ms. Sanchez to go to the emergency room and asked Cardona if there was anything she needed to do besides call Cardona.

147)   Cardona said no but that she would let DeLuca know.

148)   Later that evening, Ms. Sanchez called Cardona's cell number to tell her that the doctors in the emergency room had said Ms. Sanchez would need to stay.

149)   Cardona responded that was fine.

150)   In the evening of Tuesday, January 26, 2016, Ms. Sanchez was released from the emergency room.

151)   The next day, Wednesday, January 27, 2016, Ms. Sanchez arrived to work a little before 8:30am as usual.

152)   Ms. Sanchez worked the entire day.

153)   At 5:30pm, Cardona asked Ms. Sanchez to step with her into a meeting in a quiet room.

154)   In the room, besides Cardona and Ms. Sanchez, was DeLuca's personal assistant, Julie Deburse (last name spelling may be wrong).

155)   Cardona told Ms. Sanchez that she was being terminated first, for a "no-call, no-show" from January 21, 2016; and second, for being insubordinate at the meeting on January 22, 2016.

ELECTRONICALLY FILED
12/11/2017 11:54 PM
2017-L-012612
PAGE 17 of 23

17

156)   Specifically, the disciplinary action form stated that in that January 22, 2016 meeting, Ms. Sanchez had said, "I'm tired of you. I'm tired of Andrew."

157)   The write-up also said that Ms. Sanchez responded to Cardona's "Call In Policy" with, "I don't have your number because I deleted your number. I don't want your phone number. I should just be able to email or call the office or tell everybody in my group."

158)   Further, the write-up provided that, "After remining Daisy that the Employee manual serves as a tool for employees, Daisy responded, 'You've only been here for 7 months. Get to know the whole company first. But that's good, I will carry a book around. Just like you.'"

159)   Ms. Sanchez denied that she said many of things written on the write-up.

160)   Ms. Sanchez refused to sign the write-up.

161)   Cardona subsequently dismissed Ms. Sanchez and terminated her.

162)   As Ms. Sanchez was walking out of the quiet room, she asked Cardona if she could stop by her workstation to grab her personal belongings.

163)   Cardona responded to Ms. Sanchez that, "It's policy and procedure to escort you out."

164)   Several, similarly-situated individuals—other than the status or pregnant female—as Ms. Sanchez were not subjected to the same policy and procedural requirements of Cardona and DeLuca to which Ms. Sanchez was subjected.

165)   That evening, Ms. Sanchez discovered that her web-based email account had been revoked along with access to human resource tools such as her pay stubs.

ELECTRONICALLY FILED
12/11/2017 11:54 PM
2017-L-012612
PAGE 18 of 23

18

166) When Ms. Sanchez applied for unemployment benefits from the Illinois Department of Employment Security, Defendants objected under the alleged misconduct category of insubordination.

167) Ms. Sanchez appealed that objection and subsequently won her appeal during a telephone hearing.

168) Ms. Sanchez gave birth to her daughter, Noellie Jones, on February 27, 2016.

## COUNT I: AMERICANS WITH DISABILITIES ACT
## FAILURE TO ACCOMMODATE AND RETALIATION

169) Ms. Sanchez incorporates by reference each allegation of paragraphs 1 through 166.

170) Defendants have intentionally discriminated and retaliated against Ms. Sanchez in violation of the ADA by failing to accommodate her for her impending maternity leave.

171) Defendants have also retaliated against Ms. Sanchez by firing her for making use of a known right under the ADA, that being requesting a reasonable accommodation in the form of both an adjustment to her work schedule on Mondays to see her doctor, and, the reasonable accommodation request to take maternity leave once she gave birth to her child.

ELECTRONICALLY FILED
12/11/2017 11:54 PM
2017-L-012612
PAGE 19 of 23

19

## COUNT II: FAMILY AND MEDICAL LEAVE ACT
## RETALIATION, INTEREFERENCE WITH RIGHTS, AND DENIAL OF
## RIGHTS

172) Ms. Sanchez incorporates by reference each allegation of paragraphs 1 through 170.

173) Ms. Sanchez had worked for Defendants at least twelve months prior to her discharge, she had worked for the Defendant at least 1,250 hours within the year preceding her termination, and Defendants employed 50 or more employees at Ms. Sanchez' place-of-work, Car Outlet/Total Finance.

174) Ms. Sanchez was not designated by Defendants as a "key employee" under the FMLA.

175) Ms. Sanchez asked for FMLA leave to start after the birth of her child.

176) Defendants violated Ms. Sanchez' rights under the FMLA and willfully manipulated, interfered with, restrained and denied Ms. Sanchez the exercise of rights provided by the FMLA and its implementing regulations.

177) Defendants retaliated against Ms. Sanchez by firing her for both requesting and using her rights under the FMLA and its implementing regulations.

## COUNT III: TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## DISCRIMINATION AND RETALIATION

178) Ms. Sanchez incorporates by reference each allegation of paragraphs 1 through 178.

ELECTRONICALLY FILED
12/11/2017 11:54 PM
2017-L-012612
PAGE 20 of 23

20

179)  Defendants have intentionally discriminated and retaliated against Ms.

Sanchez in violation of Title VII and the Pregnancy Discrimination Act of 1978 on

account of her sex and pregnancy status.

180)  Specifically, Ms. Sanchez was subjected to policies and procedures other,

similarly-situated co-workers were not subjected to.

181)  Further, Ms. Sanchez was terminated due to her sex, pregnancy status, and

in retaliation for asserting her rights against such on the part of DeLuca and

Cardona.

**COUNT IV: THE ILLINOIS HUMAN RIGHTS ACT**

**FAILURE TO ACCOMMODATE, DISCRIMINATION, AND RETALIATION**

182)  Ms. Sanchez incorporates by reference each allegation of paragraphs 1

through 181.

183)  Defendants' conduct towards Ms. Sanchez on the basis of her pregnancy

status and sex is discriminatory and retaliatory in violation of the IHRA.

184)  Further, Defendants' conduct towards Ms. Sanchez violated the Pregnancy

Accommodation Act amendments to the IHRA that went into effect on January 1,

2015 in that Defendants failed to reasonably accommodate Ms. Sanchez' pregnancy

which requires, in part, that employers engage in an interactive process with

pregnant employees to discover how to reasonably accommodate such employees.

ELECTRONICALLY FILED
12/11/2017 11:54 PM
2017-L-012612
PAGE 21 of 23

21

WHEREFORE, Plaintiff prays that this Court enter a judgment:

A. Declaring Defendants' actions and practices violated Title VII; the FMLA, the ADA, and the IHRA.

B. Enjoining Defendants from engaging in actions or practices that discriminate against any employees or job applicants because of their sex and pregnancy status or their participation in this action;

C. Directing Defendants to make Plaintiff whole by providing her back pay, front pay, and reimbursement for all lost benefits;

D. Directing Defendants to pay Plaintiff compensatory damages for emotional distress caused by Defendants;

E. Directing Defendants to pay Plaintiff punitive damages sufficient to punish and deter continuation of Defendants' unlawful employment practices;

F. Awarding Plaintiff reasonable attorney's fees and costs; and

G. Awarding Plaintiff such other relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

ELECTRONICALLY FILED
12/11/2017 11:54 PM
2017-L-012612
PAGE 22 of 23

Respectfully submitted by,

Jason Han, Attorney for Daisy Sanchez

ELECTRONICALLY FILED
12/11/2017 11:54 PM
2017-L-012612
PAGE 23 of 23

#58606
Jason Han
The Law Offices of Jason Han
208 S Jefferson St., Ste. 204, Chicago, IL 60661
Ph: (872) 201-0088
Fax: (872) 228-9569
Jason@JasonHanLaw.com

23

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

DAISY SANCHEZ

v.

CAR OUTLET; TOTAL FINANCE;
ANDREW DELUCA; VERONICA CARDONA;

No. 2017-L-012612

Defendant Address:

CAR OUTLET

3400 N PULASKI ROAD

CHICAGO, IL 60641

☑ **SUMMONS**  ☐ **ALIAS - SUMMONS**

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 801 ,Chicago, Illinois 60602
☐ District 2 - Skokie          ☐ District 3 - Rolling Meadows          ☐ District 4 - Maywood
   5600 Old Orchard Rd.          2121 Euclid 1500                      Maybrook Ave.
   Skokie, IL 60077              Rolling Meadows, IL 60008             Maywood, IL 60153
☐ District 5 - Bridgeview      ☐ District 6 - Markham                ☐ Richard J. Daley Center
   10220 S. 76th Ave.            16501 S. Kedzie Pkwy.                 50 W. Washington, LL-01
   Bridgeview, IL 60455         Markham, IL 60428                     Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: 58606

Name: HAN JASON C

Atty. for: DAISY SANCHEZ

Address: 208 S JEFFERSON#204

City/State/Zip Code: CHICAGO, IL 60661

Telephone: (872) 201-0088

Primary Email Address: Jason@JasonHanLaw.com

Secondary Email Address(es):

Witness: Monday, 11 December 2017

/s DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service:

(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

(Area Code)    (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Page 1 of 1

Summons - Alias Summons                                                                 (12/31/15) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

DAISY SANCHEZ

v.

CAR OUTLET; TOTAL FINANCE;
ANDREW DELUCA; VERONICA CARDONA;

No. 2017-L-012612

Defendant Address:
ANDREW DELUCA
2900 W. IRVING PARK ROAD
CHICAGO, IL 60618

☑ **SUMMONS**   ☐ **ALIAS - SUMMONS**

To each defendant:

   YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 801 _____ ,Chicago, Illinois 60602
☐ District 2 - Skokie           ☐ District 3 - Rolling Meadows        ☐ District 4 - Maywood
   5600 Old Orchard Rd.            2121 Euclid 1500                       Maybrook Ave.
   Skokie, IL 60077                Rolling Meadows, IL 60008              Maywood, IL 60153
☐ District 5 - Bridgeview        ☐ District 6 - Markham                 ☐ Richard J. Daley Center
   10220 S. 76th Ave.             16501 S. Kedzie Pkwy.                  50 W. Washington, LL-01
   Bridgeview, IL 60455           Markham, IL 60428                      Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: 58606

Name:  HAN JASON C

Atty. for:  DAISY SANCHEZ

Address:  208 S JEFFERSON#204

City/State/Zip Code:  CHICAGO, IL 60661

Telephone:  (872) 201-0088

Primary Email Address:  Jason@JasonHanLaw.com

Secondary Email Address(es):

Witness: _____ Monday, 11 December 2017

/s DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service:

(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

_____

(Area Code)   (Facsimile Telephone Number)

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
Page 1 of 1

Summons - Alias Summons                                                                 (12/31/15) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

DAISY SANCHEZ
                    v.                          No. _2017-L-012612_
CAR OUTLET; TOTAL FINANCE;                      Defendant Address:
ANDREW DELUCA; VERONICA CARDONA;                VERONICA CARDONA
                                                3400 N PULASKI ROAD
                                                CHICAGO, IL 60641

☑ **SUMMONS** ☐ **ALIAS - SUMMONS**

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room _801_ ,Chicago, Illinois 60602

☐ District 2 - Skokie         ☐ District 3 - Rolling Meadows      ☐ District 4 - Maywood
   5600 Old Orchard Rd.          2121 Euclid 1500                    Maybrook Ave.
   Skokie, IL 60077              Rolling Meadows, IL 60008           Maywood, IL 60153

☐ District 5 - Bridgeview     ☐ District 6 - Markham              ☐ Richard J. Daley Center
   10220 S. 76th Ave.            16501 S. Kedzie Pkwy.               50 W. Washington, LL-01
   Bridgeview, IL 60455         Markham, IL 60428                   Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: _58606_                          Witness:            Monday, 11 December 2017
Name:  HAN JASON C                            /s DOROTHY BROWN
Atty. for:  DAISY SANCHEZ                      DOROTHY BROWN, Clerk of Court
Address:  208 S JEFFERSON#204
City/State/Zip Code:  CHICAGO, IL 60661        Date of Service: _____
Telephone:  (872) 201-0088                     (To be inserted by officer on copy left with Defendant or other person)
Primary Email Address:  Jason@JasonHanLaw.com
Secondary Email Address(es):                   **Service by Facsimile Transmission will be accepted at:

                                               _____
                                               (Area Code)   (Facsimile Telephone Number)

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### Page 1 of 1



# SHERIFF'S OFFICE OF COOK COUNTY, ILLINOIS
## AFFIDAVIT OF SERVICE



* 0 2 6 1 6 5 2 5 *

| | | |
|---|---|---|
| CASE NUMBER: 17L012612 | MULT.SER. 4 | DOC. TYPE: LAW |
| **DIE DATE: 01/04/2018** | RECEIVED DATE: 12/12/2017 12:00:00 PM | FILED DATE: 12/11/2017 | DIST: 618 SK |

**DEFENDANT**
DELUCA, ANDREW
2900 W IRVING PARK RD
CHICAGO, IL 60618

**PLANTIFF**
SANCHEZ, DAISY
**ATTORNEY**
HAN JASON C
208 S JEFFERSON 204
CHICAGO, IL 60661
(872) 201-0088

**ATTACHED FEE AMOUNT:**
**SERVICE INFORMATION:**       RM 801

I CERTIFY THAT I SERVED THE DEFENDANT/RESPONDENT AS FOLLOWS:

_____ **(1) PERSONAL SERVICE:**
BY LEAVING A COPY OF THE WRIT/ORDER WITH THE DEFENDANT/RESPONDENT PERSONALLY, AND INFORMING DEFENDANT/RESPONDENT OF CONTENTS.

_____ **(2) SUBSTITUTE SERVICE:**
BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT AT THE DEFENDANT'S USUAL PLACE OF ABODE WITH A FAMILY MEMBER OR PERSON RESIDING THERE, 13 YEARS OR OLDER, AND INFORMING THAT PERSON OF THE CONTENTS OF THE SUMMONS. ALSO, A COPY OF THE SUMMONS WAS MAILED TO THE DEFENDANT AT HIS OR HER USUAL PLACE OF ABODE ON THE _____ DAY OF _____ 20_____

_____ **(3) UNKNOWN OCCUPANTS:**
BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT NAMING "UNKNOWN OCCUPANTS" WITH A PERSON OF THE AGE OF 13 OR UPWARDS OCCUPYING SAID PREMISE.

_____ **(4) CORP/CO/BUS/PART:**
BY LEAVING THE APPROPRIATE NUMBER OF COPIES OF THE SUMMONS, COMPLAINTS, INTERROGATORIES, JUDGMENTS, CERTIFICATIONS AND NOTICES WITH THE REGISTERED AGENT, AUTHORIZED PERSON OR PARTNER OF THE DEFENDANT CORPORATION _____ COMPANY _____ BUSINESS _____ PARTNERSHIP _____

_____ **(5) PROPERTY RECOVERED:**
NO ONE PRESENT TO RECEIVE ORDER OF COURT. ORDER POSTED IN PLAIN VIEW.

_____ **(6) S.O.S./D.O.I.:**
BY LEAVING THE SUMMONS AND COMPLAINT WITH THE SECRETARY OF THE STATE/DIRECTOR OF INSURANCE OF THE STATE OF ILLINOIS, AN AGENT OF SAID DEFENDANT LISTED ABOVE. ANY AGENT OF SAID CORPORATION NOT FOUND IN THE COUNTY OF COOK.

_____ **(7) CERTIFIED MAIL**

***** COMPLETE THIS SECTION IF WRIT IS A THIRD PARTY CITATION/GARNISHMENT *****

_____ **(8)**     AND BY MAILING ON THE _____ DAY OF _____ 20_____ A COPY OF THE THIRD PARTY GARNISHMENT/CITATION SUMMONS AND NOTICE TO THE JUDGMENT DEBTOR'S LAST KNOWN ADDRESS AS INDICATED IN THE NOTICE WITHIN (2) BUSINESS DAYS OF SERVICE UPON GARNISHEE/THIRD PARTY DEFENDANT.

**THE NAMED DEFENDANT WAS NOT SERVED FOR THE GIVEN REASON BELOW:**

| | | |
|---|---|---|
| _____ (01) NO CONTACT | _____ (05) WRONG ADDRESS | _____ (09) DECEASED |
| _____ (02) MOVED | _____ (06) NO SUCH ADDRESSS | _____ (10) NO REGISTERED AGENT |
| _____ (03) EMPTY LOT | _____ (07) EMPLOYER REFUSAL | _____ (11) OUT OF COOK COUNTY |
| _____ (04) NOT LISTED | _____ (08) CANCELLED BY PLAINTIFF ATTY | __V____ (12) OTHER REASON (EXPLAIN) |

EXPLANATION: _____ *NEED APT II* _____

WRIT SERVED ON: _____ *N/S #12* _____

| | ATTEMPTED SERVICES | |
|---|---|---|
| | DATE | TIME (AM/PM) | STAR # |
| SEX: M / F   RACE: _____ AGE: _____ | *19 DEC* | *5:45* | *10008* |
| THIS *19* DAY OF *DEC*, 20 *17* | : | | |
| Thomas J. Dart | : | | |
| SHERIFF, BY: _____ *10006*, DEPUTY | : | | |
| | : | | |

JON614

*M/U*



# SHERIFF'S OFFICE OF COOK COUNTY, ILLINOIS
## AFFIDAVIT OF SERVICE



```
* 0 2 6 1 6 5 2 4 *
```

| CASE NUMBER: 17L012612 | MULT.SER. 4 | DOC. TYPE: LAW |
|---|---|---|

**DIE DATE:** 01/04/2018     RECEIVED DATE: 12/12/2017     FILED DATE: 12/11/2017     **DIST:** 641 SK
        12:00:00 PM

**DEFENDANT**
TOTAL FINANCE
3400 N PULASKI RD
CHICAGO, IL 60641

**PLANTIFF**
SANCHEZ, DAISY
**ATTORNEY**
HAN JASON C
208 S JEFFERSON  204
CHICAGO, IL 60661
(872) 201-0088

**ATTACHED FEE AMOUNT:**

**SERVICE INFORMATION:**     RM 801

**I CERTIFY THAT I SERVED THE DEFENDANT/RESPONDENT AS FOLLOWS:**

_____ **(1) PERSONAL SERVICE:**
BY LEAVING A COPY OF THE WRIT/ORDER WITH THE DEFENDANT/RESPONDENT PERSONALLY, AND INFORMING DEFENDANT/RESPONDENT OF CONTENTS.

_____ **(2) SUBSTITUTE SERVICE:**
BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT AT THE DEFENDANT'S USUAL PLACE OF ABODE WITH A FAMILY MEMBER OR PERSON RESIDING THERE, 13 YEARS OR OLDER, AND INFORMING THAT PERSON OF THE CONTENTS OF THE SUMMONS.  ALSO, A COPY OF THE SUMMONS WAS MAILED TO THE DEFENDANT AT HIS OR HER USUAL PLACE OF ABODE ON THE _____ DAY OF _____ 20_____

_____ **(3) UNKNOWN OCCUPANTS:**
BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT NAMING "UNKNOWN OCCUPANTS" WITH A PERSON OF THE AGE OF 13 OR UPWARDS OCCUPYING SAID PREMISE.

X **(4) CORP/CO/BUS/PART:**
BY LEAVING THE APPROPRIATE NUMBER OF COPIES OF THE SUMMONS, COMPLAINTS, INTERROGATORIES, JUDGMENTS, CERTIFICATIONS AND NOTICES WITH THE REGISTERED AGENT, AUTHORIZED PERSON OR PARTNER OF THE DEFENDANT CORPORATION
X COMPANY _____ BUSINESS _____ PARTNERSHIP _____

_____ **(5) PROPERTY RECOVERED:**
NO ONE PRESENT TO RECEIVE ORDER OF COURT.  ORDER POSTED IN PLAIN VIEW.

_____ **(6) S.O.S./D.O.I.:**
BY LEAVING THE SUMMONS AND COMPLAINT WITH THE SECRETARY OF THE STATE/DIRECTOR OF INSURANCE OF THE STATE OF ILLINOIS, AN AGENT OF SAID DEFENDANT LISTED ABOVE.  ANY AGENT OF SAID CORPORATION NOT FOUND IN THE COUNTY OF COOK.

_____ **(7) CERTIFIED MAIL**

***** COMPLETE THIS SECTION IF WRIT IS A THIRD PARTY CITATION/GARNISHMENT *****

_____ **(8)**     AND BY MAILING ON THE _____ DAY OF _____ 20_____ A COPY OF THE THIRD PARTY GARNISHMENT/CITATION SUMMONS AND NOTICE TO THE JUDGMENT DEBTOR'S LAST KNOWN ADDRESS AS INDICATED IN THE NOTICE  WITHIN (2) BUSINESS DAYS OF SERVICE UPON GARNISHEE/THIRD PARTY DEFENDANT.

**THE NAMED DEFENDANT WAS NOT SERVED FOR THE GIVEN REASON BELOW:**

| _____ (01) NO CONTACT | _____ (05) WRONG ADDRESS | _____ (09) DECEASED |
|---|---|---|
| _____ (02) MOVED | _____ (06) NO SUCH ADDRESSS | _____ (10) NO REGISTERED AGENT |
| _____ (03) EMPTY LOT | _____ (07) EMPLOYER REFUSAL | _____ (11) OUT OF COOK COUNTY |
| _____ (04) NOT LISTED | _____ (08) CANCELLED BY PLAINTIFF ATTY | _____ (12) OTHER REASON (EXPLAIN) |

EXPLANATION: _____

WRIT SERVED ON: *LANCE SEAMANS*

SEX: M/F    04    RACE: N    AGE: Apr

THIS   04   DAY OF   JAN   20 18

Thomas J. Dart

SHERIFF, BY: _____ *M 10953* _____, DEPUTY

| | ATTEMPTED SERVICES | | |
|---|---|---|---|
| | DATE | TIME (AM/PM) | STAR # |
| | 04JAN18 | 509 : pm | 10957 |
| | | : | |
| | | : | |
| | | : | |

JON614



# SHERIFF'S OFFICE OF COOK COUNTY, ILLINOIS
## AFFIDAVIT OF SERVICE



* 0 2 6 1 6 5 2 6 *

| | | |
|---|---|---|
| CASE NUMBER: 17L012612 | MULT.SER. 4 | DOC. TYPE: LAW |
| DIE DATE: 01/04/2018 | RECEIVED DATE: 12/12/2017 12:00:00 PM | FILED DATE: 12/11/2017 | DIST: 641 S |

**DEFENDANT**
CARDONA, VERONICA
3400 N PULASKI RD
CHICAGO, IL 60641

**PLANTIFF**
SANCHEZ, DAISY
**ATTORNEY**
HAN JASON C
208 S JEFFERSON 204
CHICAGO, IL 60661
(872) 201-0088

**ATTACHED FEE AMOUNT:**
**SERVICE INFORMATION:** RM 801

I CERTIFY THAT I SERVED THE DEFENDANT/RESPONDENT AS FOLLOWS:

_____ **(1) PERSONAL SERVICE:**
BY LEAVING A COPY OF THE WRIT/ORDER WITH THE DEFENDANT/RESPONDENT PERSONALLY, AND INFORMING
DEFENDANT/RESPONDENT OF CONTENTS.

_____ **(2) SUBSTITUTE SERVICE:**
BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT AT THE DEFENDANT'S USUAL PLACE OF ABODE WITH A FAMILY MEMBER OR
PERSON RESIDING THERE, 13 YEARS OR OLDER, AND INFORMING THAT PERSON OF THE CONTENTS OF THE SUMMONS. ALSO, A COPY
OF THE SUMMONS WAS MAILED TO THE DEFENDANT AT HIS OR HER USUAL PLACE OF ABODE ON THE _____ DAY OF _____
20_____

_____ **(3) UNKNOWN OCCUPANTS:**
BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT NAMING "UNKNOWN OCCUPANTS" WITH A PERSON OF THE AGE OF 13 OR
UPWARDS OCCUPYING SAID PREMISE.

_____ **(4) CORP/CO/BUS/PART:**
BY LEAVING THE APPROPRIATE NUMBER OF COPIES OF THE SUMMONS, COMPLAINTS, INTERROGATORIES, JUDGMENTS,
CERTIFICATIONS AND NOTICES WITH THE REGISTERED AGENT, AUTHORIZED PERSON OR PARTNER OF THE DEFENDANT CORPORATION
_____ COMPANY _____ BUSINESS _____ PARTNERSHIP _____

_____ **(5) PROPERTY RECOVERED:**
NO ONE PRESENT TO RECEIVE ORDER OF COURT. ORDER POSTED IN PLAIN VIEW.

_____ **(6) S.O.S./D.O.I.:**
BY LEAVING THE SUMMONS AND COMPLAINT WITH THE SECRETARY OF THE STATE/DIRECTOR OF INSURANCE OF THE STATE OF
ILLINOIS, AN AGENT OF SAID DEFENDANT LISTED ABOVE. ANY AGENT OF SAID CORPORATION NOT FOUND IN THE COUNTY OF COOK.

_____ **(7) CERTIFIED MAIL**

***** COMPLETE THIS SECTION IF WRIT IS A THIRD PARTY CITATION/GARNISHMENT *****

_____ **(8)** AND BY MAILING ON THE _____ DAY OF _____ 20____ A COPY OF THE THIRD PARTY GARNISHMENT/CITATION
SUMMONS AND NOTICE TO THE JUDGMENT DEBTOR'S LAST KNOWN ADDRESS AS INDICATED IN THE NOTICE WITHIN (2)
BUSINESS DAYS OF SERVICE UPON GARNISHEE/THIRD PARTY DEFENDANT.

**THE NAMED DEFENDANT WAS NOT SERVED FOR THE GIVEN REASON BELOW:**

| | | |
|---|---|---|
| ✓ (01) NO CONTACT | _____ (05) WRONG ADDRESS | _____ (09) DECEASED |
| _____ (02) MOVED | _____ (06) NO SUCH ADDRESS | _____ (10) NO REGISTERED AGENT |
| _____ (03) EMPTY LOT | _____ (07) EMPLOYER REFUSAL | _____ (11) OUT OF COOK COUNTY |
| _____ (04) NOT LISTED | _____ (08) CANCELLED BY PLAINTIFF ATTY | _____ (12) OTHER REASON (EXPLAIN) |

EXPLANATION: _____

WRIT SERVED ON: *NOT SERVED PW CONTACT*

| | ATTEMPTED SERVICES | | |
|---|---|---|---|
| | DATE | TIME (AM/PM) | STAR # |
| SEX: M / F   RACE: _____   AGE: _____ | 04 JAN 18 | 50 9 : PM | 10953 NOT IN |
| THIS 04 DAY OF JAN, 20 17 | : | | |
| Thomas J. Dart | : | | |
| SHERIFF, BY: _____ 10953 , DEPUTY | | | |

JON614



## SHERIFF'S OFFICE OF COOK COUNTY, ILLINOIS
## AFFIDAVIT OF SERVICE



* 0 2 6 1 6 5 2 3 *

CASE NUMBER: 17L012612        MULT.SER. 4                DOC. TYPE: LAW
**DIE DATE: 01/04/2018**     RECEIVED DATE: 12/12/2017    FILED DATE: 12/11/2017         DIST: 641 SK
                                    12:00:00 PM

| DEFENDANT | PLANTIFF |
|---|---|
| CAR OUTLET | SANCHEZ, DAISY |
| 3400 N PULASKI RD | **ATTORNEY** |
| CHICAGO, IL 60641 | HAN JASON C |
| | 208 S JEFFERSON 204 |
| | CHICAGO, IL 60661 |
| | (872) 201-0088 |

**ATTACHED FEE AMOUNT:**
**SERVICE INFORMATION:**      RM 801

### I CERTIFY THAT I SERVED THE DEFENDANT/RESPONDENT AS FOLLOWS:

_____ **(1) PERSONAL SERVICE:**
BY LEAVING A COPY OF THE WRIT/ORDER WITH THE DEFENDANT/RESPONDENT PERSONALLY, AND INFORMING DEFENDANT/RESPONDENT OF CONTENTS.

_____ **(2) SUBSTITUTE SERVICE:**
BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT AT THE DEFENDANT'S USUAL PLACE OF ABODE WITH A FAMILY MEMBER OR PERSON RESIDING THERE, 13 YEARS OR OLDER, AND INFORMING THAT PERSON OF THE CONTENTS OF THE SUMMONS. ALSO, A COPY OF THE SUMMONS WAS MAILED TO THE DEFENDANT AT HIS OR HER USUAL PLACE OF ABODE ON THE _____ DAY OF _____ 20_____

_____ **(3) UNKNOWN OCCUPANTS:**
BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT NAMING "UNKNOWN OCCUPANTS" WITH A PERSON OF THE AGE OF 13 OR UPWARDS OCCUPYING SAID PREMISE.

**X** **(4) CORP/CO/BUS/PART:**
BY LEAVING THE APPROPRIATE NUMBER OF COPIES OF THE SUMMONS, COMPLAINTS, INTERROGATORIES, JUDGMENTS, CERTIFICATIONS AND NOTICES WITH THE REGISTERED AGENT, AUTHORIZED PERSON OR PARTNER OF THE DEFENDANT CORPORATION
**X** COMPANY _____ BUSINESS _____ PARTNERSHIP _____

_____ **(5) PROPERTY RECOVERED:**
NO ONE PRESENT TO RECEIVE ORDER OF COURT. ORDER POSTED IN PLAIN VIEW.

_____ **(6) S.O.S./D.O.I.:**
BY LEAVING THE SUMMONS AND COMPLAINT WITH THE SECRETARY OF THE STATE/DIRECTOR OF INSURANCE OF THE STATE OF ILLINOIS, AN AGENT OF SAID DEFENDANT LISTED ABOVE. ANY AGENT OF SAID CORPORATION NOT FOUND IN THE COUNTY OF COOK.

_____ **(7) CERTIFIED MAIL**

***** COMPLETE THIS SECTION IF WRIT IS A THIRD PARTY CITATION/GARNISHMENT *****

_____ **(8)** AND BY MAILING ON THE _____ DAY OF _____ 20_____ A COPY OF THE THIRD PARTY GARNISHMENT/CITATION SUMMONS AND NOTICE TO THE JUDGMENT DEBTOR'S LAST KNOWN ADDRESS AS INDICATED IN THE NOTICE WITHIN (2) BUSINESS DAYS OF SERVICE UPON GARNISHEE/THIRD PARTY DEFENDANT.

### THE NAMED DEFENDANT WAS NOT SERVED FOR THE GIVEN REASON BELOW:

| | | | | | |
|---|---|---|---|---|---|
| _____ (01) NO CONTACT | _____ (05) WRONG ADDRESS | _____ (09) DECEASED |
| _____ (02) MOVED | _____ (06) NO SUCH ADDRESS | _____ (10) NO REGISTERED AGENT |
| _____ (03) EMPTY LOT | _____ (07) EMPLOYER REFUSAL | _____ (11) OUT OF COOK COUNTY |
| _____ (04) NOT LISTED | _____ (08) CANCELLED BY PLAINTIFF ATTY | _____ (12) OTHER REASON (EXPLAIN) |

EXPLANATION: _____

WRIT SERVED ON: *VANCE SEAMAN*

SEX: (M)/F  *04*   RACE: *W*   AGE: *Apt*
THIS _____ DAY OF _____ 20 ___
Thomas J. Dart
SHERIFF, BY: *10953* , DEPUTY

ATTEMPTED SERVICES

| DATE | TIME (AM/PM) | STAR # |
|---|---|---|
| *01 JAN 18* | *509 PM* | *10953* |
| : | | |
| : | | |
| : | | |

*ofc*

JON614